JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, William Hartson, appeals from a judgment finding him guilty of three counts of drug possession. For the following reasons, we affirm Hartson's conviction, but modify his sentence from three years of mandatory postrelease control to three years of discretionary postrelease control.
 {¶ 2} The Cuyahoga County Grand Jury indicted Hartson on five counts: one count of drug trafficking, a violation of R.C. 2925.03(A)(2); three counts of drug possession, a violation of R.C. 2925.11(A); and one count of possessing criminal tools, a violation of R.C. 2923.21(A). All of the counts contained forfeiture specifications, and the trafficking count also contained a schoolyard specification.
 {¶ 3} The case proceeded to a jury trial in May 2008. The following evidence was presented at trial.
 {¶ 4} Sergeant Paul Styles, an officer for the Cuyahoga Metropolitan Housing Authority ("CMHA"), testified that he was in charge of the crime suppression unit. In October 2007, he received a complaint of drug activity at an apartment in the Carter Park Estates on Quincy Avenue. Sergeant Styles testified that his unit has made many arrests at the Carter Park Estates.
 {¶ 5} Prior to going to the apartment, he learned that Hartson was the leaseholder. He took two of his detectives with him to the apartment. As they *Page 4 
were walking into the building, a woman was coming out of the building with "one rock of crack cocaine."[1] They discovered that she was coming from Hartson's apartment. They knocked on Hartson's door, and a woman answered. They asked her if Hartson was home. She said that he was, and yelled to him that the police were at the door. There was another woman sitting inside the apartment.
 {¶ 6} Sergeant Styles asked Hartson if they could come in to talk to him about complaints of drug activity. Hartson replied that they could. Once inside, Sergeant Styles immediately observed several "torn-off baggies on the floor, tied up." He explained that the bags were often used to "package and store drugs, illegal drugs."
 {¶ 7} Although Hartson refused to sign a consent-to-search form, he agreed to "let [the officers] look around." They went in Hartson's bedroom and observed in plain view on his dresser some plastic bags, "crack cocaine residue, razor blades, [and] things of that nature." There was also cocaine residue on the razor blades. Sergeant Styles said that he also saw a red box inside a dresser drawer because part of the dresser was missing. Inside the red box was more crack cocaine and "maybe a couple bags of marijuana." They recovered 1.81 grams of crack cocaine in the bag inside the box and .02 grams on top of the dresser. At that time, the officers placed Hartson under arrest. *Page 5 
 {¶ 8} Detective William Chapman also testified and corroborated Sergeant Styles's testimony. In addition, he stated that he searched the two women who were in Hartson's apartment and checked them for active warrants. He then told them they were free to go.
 {¶ 9} Officer William Higginbotham testified that he responded to the scene with his K-9 partner. He explained that the dog first discovered drugs inside the dresser, which led the officers to find the red box. He said there was some money and marijuana beside the red box, which was inside the drawer. He also testified that there were razor blades and a small amount of what appeared to be cocaine residue on top of the box.
 {¶ 10} The jury found Hartson guilty of the three counts of drug possession, but not guilty of drug trafficking and possessing criminal tools. The jury also found Hartson not guilty of all the specifications. The trial court merged the two possessions (of crack cocaine) for purpose of sentencing and sentenced him to ten months on the merged counts and ten months on possession of cocaine, and ordered that they be served concurrent to one another for an aggregate sentence of ten months. The trial court also imposed three years of mandatory postrelease control.
 {¶ 11} It is from this judgment that Hartson appeals, raising the following three assignments of error for our review. *Page 6 
 {¶ 12} "[1.] Defendant's conviction of drug possession was against the manifest weight of the evidence.
 {¶ 13} "[2.] The trial court erred in denying defendant's request for a pre-sentence investigation report prior to sentencing.
 {¶ 14} "[3.] The trial court's sentence of ten months was excessive."
 Manifest Weight of the Evidence {¶ 15} In his first assignment of error, Hartson contends that his convictions for drug possession are against the manifest weight of the evidence. We disagree.
 {¶ 16} In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court explained:
 {¶ 17} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *** Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *** Weight is not a question of mathematics, but depends on its effect in inducing belief' (Emphasis added.) ***
 {¶ 18} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the *Page 7 
conflicting testimony. *** `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" (Internal citations omitted.)
 {¶ 19} With this standard in mind, we do not agree with Hartson that his convictions were against the manifest weight of the evidence.
 {¶ 20} To convict one of drug possession, the state must prove that the person knowingly obtained, possessed, or used a controlled substance. R.C. 2925.11(A).
 {¶ 21} For one to "knowingly" possess drugs, he or she must be "aware that his [or her] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2925.22(B). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." Id. The issue of whether a person charged with drug possession knowingly possessed, obtained, or used a controlled substance "is to be determined from all the attendant facts and circumstances available." State v. Teamer, 82 Ohio St.3d 490, 492, 1998-Ohio-193. *Page 8 
 {¶ 22} Hartson concedes that he "voluntarily allowed the officers to search [his] apartment" and that they "discovered the drugs in plain view." He maintains, however, that because there were two women in his apartment who were "in a rush to leave," that it was "entirely plausible that one or both of the females could have left the drugs in Mr. Hartson's bedroom."
 {¶ 23} It may have been "entirely plausible," but the jury was free to believe the state's theory that the drugs, which were found in and on Hartson's dresser, were his. Moreover, the jury found Hartson not guilty of drug trafficking and possessing criminal tools. Thus, we find that they did not lose their way and create such a manifest miscarriage of justice that Hartson's convictions should be overturned.
 {¶ 24} Hartson's first assignment of error is overruled.
 Presentence Investigation Report {¶ 25} In his second assignment of error, Hartson argues that the trial court erred when it denied his request for a presentence investigation ("PSI") report prior to sentencing. We disagree.
 {¶ 26} In State v. Leonard, 8th Dist. No. 88299, 2007-Ohio-3745, this court stated:
 {¶ 27} "R.C. 2951.03(A)(1) provides, `No person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written PSI has been considered by the court. If a court orders the preparation of a PSI ***, the officer making the report shall inquire into the circumstances of the *Page 9 
offense and the criminal record, social history, and present condition of the defendant ***.'
 {¶ 28} "This provision demonstrates that a PSI is mandatory only if the trial court sentences an offender to community control sanctions.*** The General Assembly has recognized that some offenders will be sentenced to prison without the existence of a PSI. Id. Moreover, a trial court's decision to order a PSI is within its sound discretion." (Internal citations omitted.) Id. at _14-15.
 {¶ 29} Here, prior to sentencing, Hartson requested a PSI report. The trial court stated: "Okay. I'm going to deny that. Again, I have full psychiatric clinic reports that go into detail with respect to his personal history and, I'm aware of his criminal history and, I presided over the trial so I'm aware of the facts of the case; therefore, I'm going to go ahead and proceed to sentencing."
 {¶ 30} Hartson claims that a "[PSI] report would have aided the Court in determining an appropriate sentence for Defendant," but he fails to establish how. As the court stated, it already had his full psychiatric clinic reports (he had been referred to the court's psychiatric clinic for evaluation), and it was aware of his prior criminal history and that Hartson had been out of prison (for an abduction conviction) for approximately six years without committing any other offenses. Thus, we do not find that the trial court abused its discretion when it denied Hartson's request for a PSI report.
 Sentencing *Page 10 {¶ 31} In his third assignment of error, Hartson maintains that his sentence of ten months was excessive. We disagree.
 {¶ 32} In State v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912, the Ohio Supreme Court set forth the standard for appellate review afterState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. Appellate courts review sentences by applying a two-prong approach. Id. at _26; see, also, State v. Nolan, 8th Dist. No. 90646, 2008-Ohio-5595. First, we must determine whether the sentence is clearly and convincingly contrary to law. Id. If it is not contrary to law, then we must decide if the sentencing court abused its discretion when sentencing the defendant. Id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 33} The trial court merged Hartson's convictions for possessing crack cocaine, but not the conviction for possession of cocaine. It then sentenced Hartson to ten months for possessing crack cocaine and ten months for possessing cocaine, and ordered that they be served concurrently.
 {¶ 34} The plurality opinion in Kalish pointed out that "[i]nFoster, we severed the judicial-fact-finding portions of R.C. 2929.14, holding that `trial courts have full discretion to impose a prison sentence within the statutory range[.]'" Kalish at _1, quotingFoster at _100. The plurality opinion further explained that "[a]lthoughFoster eliminated mandatory judicial fact-finding for *Page 11 
upward departures from the minimum, it left intact R.C. 2929.11 and2929.12. The trial court must still consider these statutes. State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, _38." Id. at _13. Further, the trial court must still be mindful of imposing the correct term of postrelease control. Kalish at _13.
 {¶ 35} "R.C. 2929.11 and 2929.12 *** serve as an overarching guide for [a] trial judge to consider in fashioning an appropriate sentence. In considering these statutes in light of Foster, the trial court has full discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. Moreover, R.C. 2929.12
explicitly permits trial courts to exercise their discretion in considering whether its sentence complies with the purposes of sentencing." Kalish at _17.
 {¶ 36} Hartson's drug possession convictions were fourth degree felonies and, thus, the trial court could have sentenced Hartson to between six and eighteen months for each conviction of possessing crack cocaine and cocaine. Ten months is clearly within that range. Moreover, the trial court could have ordered that the sentences be served consecutively, which means Hartson could have received an aggregate sentence of twenty months in prison. Instead, the trial court properly merged two of Hartson's possession convictions and reasonably sentenced Hartson to ten months in prison. This was neither contrary to law nor an abuse of discretion.
 {¶ 37} Hartson's third assignment of error is overruled.
 Postrelease Control *Page 12 {¶ 38} Although Hartson does not raise the issue of postrelease control, we sua sponte consider it as it affects his substantial rights. See State v. Simpson, 8th Dist. No. 88301, 2007-Ohio-4301, discretionary appeal not allowed by 116 Ohio St.3d 1479, 2008-Ohio-153. We find that the trial court incorrectly imposed three years of mandatory postrelease control when it should have imposed three years of discretionary postrelease control. As we are permitted to do in R.C. 2953.08(G)(2), we sua sponte modify his sentence to correct that error.
 {¶ 39} R.C. 2967.28 provides that offenders are subject to terms of postrelease control depending upon the degree and type of crime committed. R.C. 2967.28(B) provides that postrelease control is mandatory for first and second degree felonies, felony sex offenses, and third degree felonies that are not sex offenses but during which the defendant caused or threatened physical harm, and it specifies the length of postrelease control for each degree of felony. R.C. 2967.28(C) provides that postrelease control is discretionary for certain third, fourth, or fifth degree felonies not subject to R.C. 2967.28(B), if the parole board determines that a period of postrelease control is necessary for that offender.
 {¶ 40} Here, the trial court stated in its sentencing entry that, "[p]ostrelease control is part of this prison sentence for three years for the above felony(s) under R.C. 2967.28." At the sentencing hearing, the trial court stated, "[n]ow, you're going to get three years of supervision by the parole board when *Page 13 
you get out[.]" The trial court incorrectly imposed three years ofmandatory postrelease control. Because Hartson was convicted of fourth degree felonies (that were not sex offenses and did not involve harm), he was only subject to three years of discretionary postrelease control.
 {¶ 41} Under R.C. 2953.08(G)(2), an appellate court "may increase, reduce, or otherwise modify a sentence *** or may vacate that sentence and remand the matter to the sentencing court for resentencing. *** The appellate court may take any action authorized by this division if it clearly and convincingly finds *** [t]hat the sentence is otherwise contrary to law."
 {¶ 42} Since the trial court's imposition of mandatory postrelease control was contrary to law, we modify Hartson's sentence to include three years of discretionary postrelease control. See Simpson, supra (this court sua sponte modified Simpson's sentence to include five years of mandatory postrelease control, rather than ten years).
 {¶ 43} As in Simpson, this case is distinguishable from State v.Bezak, 114 Ohio St.3d 94, 2007-Ohio-3250, which requires a defendant to be resentenced when postrelease control is not included in a sentence. Id. at syllabus. Here, Hartson was actually given more postrelease control than was required under the statute and, thus, was put on notice that he would be subject to postrelease control. See, also, State exrel. Cruzado v. Zaleski, 111 Ohio St.3d 353, 2006-Ohio-5795, at _26 (writ of habeas corpus denied where trial court informed *Page 14 
defendant at sentencing hearing that he would be subjected to five years of mandatory postrelease control, when it should have been only three years); Leonard, supra (modified postrelease control from five years of mandatory to three years of mandatory); State v. Rogers, 12th Dist. No. CA2006-09-036, 2007-Ohio-3720 (modified postrelease control from five years postrelease control to three years of discretionary postrelease control); State v. Petty, 5th Dist. No. 2007CA00050, 2008-Ohio-5962
(modified postrelease control from five years postrelease control to three years of discretionary postrelease control).
 {¶ 44} Accordingly, the judgment of Cuyahoga County Court of Common Pleas is affirmed, except for sentencing. Hartson's sentence is modified from three years of mandatory postrelease control to three years of discretionary postrelease control. The remaining sentencing terms are not affected by this decision. The matter is remanded to the trial court to execute a sentencing entry reflecting this modification.
It is ordered that appellee and appellant share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 15 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., CONCURS;
COLLEEN CONWAY COONEY, A.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION.
[1] This woman was arrested by the officers.